**ADANTE D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**TY L. CLARKE, ESQ., SBN 339198**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208,
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: TClarke@LawyersFTP.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DARRYL MEFFERD, by and through its personal representative, EVANGELINA HUMPHREY; EVANGELINA HUMPHREY, INDIVIDUALLY,<br><br>                    Plaintiffs,<br><br>v.<br><br>CITY OF VALLEJO, a municipal corporation; JEREMY CALLINAN, in his individual capacity as a law enforcement officer for the VALLEJO POLICE DEPARTMENT; ANDREW BIDOU, in his individual capacity as the chief of police for the VALLEJO POLICE DEPARTMENT; and DOES 1-50, inclusive.<br><br>                    Defendants | Case No.:<br><br>COMPLAINT FOR DAMAGES<br>(42 U.S.C. § 1983)<br><br><br>JURY TRIAL DEMANDED |

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE<br>155 Filbert St., Ste. 208, Oakland, CA 94607<br>Tel: (510) 929 - 5400

# INTRODUCTION

1.      On December 7, 2016, Defendant Vallejo Police Officer Jeremy Callinan (hereinafter "Defendant Callinan") brutally killed Darryl Dean Mefferd (hereinafter "Darryl"). Mr. Mefferd had voluntarily checked himself into Sutter Solano Medical Center earlier in the day and recently left when Officer Callinan encountered him. Mr. Mefferd's sister, Cindie, was on the way to pick him up but when she arrived Ofc. Callinan had already placed Mr. Mefferd into the back of his police car.

2.      Cindy offered to take Mr. Mefferd home but Ofc. Callinan declined. Ofc. Callinan stated Darryl was not under arrest but was taken into custody for the purpose of transporting Darryl to the Solano County Crisis Center, a mental health facility in nearby Fairfield. Thirty minutes later, Defendant Callinan had pulled Darryl from the car, placed him on his stomach, handcuffed him and then sat his entire body weight on Darryl's back for ten minutes, while Darryl was handcuffed, face-down and compliant.

3.      When Ofc. Callinan realized that Darryl had fallen unresponsive, he did not remove his weight from Darryl's back, summon emergency medical services or turn Darryl onto his side into a recovery position or initiate CPR. Instead, Ofc. Callinan remained on Darryl's back while he called for police back up. When an officer finally arrived, the officer ordered Ofc. Callinan to get off Darryl's back, flipped Darryl over and began CPR.

4.      Following Darryl's death, Defendant City of Vallejo and Solano County law enforcement officers worked immediately to bury the facts of the incident from Darryl's family and the public. The Solano County Coroner's Office investigator, Deputy Coroner Sergeant McLean, received a report that a man had died in a physical confrontation with VPD Ofc. Callinan. Sgt. McLean viewed Darryl's body and documented several injuries on Darryl's body that were evidence of physical struggle and was apparently drafting a report for the medical

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

examiner stating so. However, Sgt. McLean changed his report after discussions with County and City law enforcement officers. Sgt. McLean submitted a report to the medical examiner bereft of any mention of physical confrontation – despite video evidence and Ofc. Callinan's interview stating otherwise – and instead wrote that Darryl had collapsed and fell unresponsive in a transparent effort to mislead the medical examiner. Without any factual context of a physical struggle or that Ofc. Callinan had sat on Darryl's back in the prone position for ten minutes, the medical examiner was forced to conclude that Darryl died from an accidental drug overdose.

5.     Once Defendants had secured an accidental overdose ruling, they took further steps to ensure that the truth about Ofc. Callinan's killing of Darryl would never be discovered. Darryl's family and journalists requested the reports, interviews and video evidence of the incident but Defendant City and the relevant government agencies refused to release any of the information. The City has continued defend and refuse to provide the evidence despite a lawsuit seeking they disclose the information.

6.     In order to avoid having to disclose the evidence to the family, Defendants artfully maintained that Darryl died from an accidental overdose and no force was used, despite body camera footage and Ofc. Callinan's statements to the contrary. Defendants have continued to lie about the use of force because California's transparency laws would require Defendants to disclose the evidence if the department classified the incident as involving force. Therefore, despite ongoing litigation around the evidence, Defendants have managed to conceal Defendant Callinan's horrific, slow killing of Darryl for eight years.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

7.      Strictly due to small newspaper journalist investigators at Open Vallejo and a confidential source[1], in an article titled "*The secret death of Darryl Dean Mefferd*", fragments of truth about the details of Darryl's death were published on June 10, 2024.   Darryl's family had requested and been routinely denied in their efforts to access information about the details of Darryl's death and would never have known about how Defendant Callinan killed their beloved Darryl — until this article published on June 10, 2024.

8.      Plaintiffs finally learned for the first time, from a source who reviewed Defendant Callinan's body-worn camera recording of the incident, that there was evidence that use of force was involved in the incident and that Darryl did not suddenly just collapse and die from a drug overdose. The source disclosed that video evidence showed that Defendant Callinan physically struggled and got on top of the handcuffed Darryl, who lay face-down on his stomach, and "sat on him with his whole-body weight" for ten minutes straight until he asphyxiated.

9.      As a result, Plaintiffs sought out legal counsel and have promptly filed this lawsuit within 3 months of learning Defendant Callinan killed Darryl, rather than simply dropping dead. Notably, to this day, Defendants have refused to acknowledge that Defendant Callinan used any force against Darryl or disclose Callinan's recorded interview or the body cameras.  The Defendant City of Vallejo's subsequent cover-up of Darryl is unfortunately all

---

[1] **"The secret death of Darryl Dean Mefferd"**
https://openvallejo.org/2024/06/10/the-secret-death-of-darryl-dean-mefferd/

too common for the deadliest police department in northern California[2] that has a nefarious

influence on the city's operations.[3]

10.    Plaintiffs are furthermore concerned that Defendants plan to purge the body

camera video, interview statements and case evidence. Defendant City's attorney, Katelyn

Knight, and sergeant, Matthew Mustard, have ordered the destruction of other Vallejo officer

killings despite ongoing litigation to recover the records of these killings.[4]

### JURISDICTION

11.    This action arises under Title 42 of the United States Code, Section 1983.

Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331

and 1343. The unlawful acts and practices alleged herein occurred in Solano County, California,

which is within this judicial district.

### PARTIES

12.    Decedent DARRYL DEAN MEFFERD (hereinafter "Decedent" or "Darryl")

was an adult and died intestate and unmarried. Decedent was the biological son of Plaintiff

EVANGELINA HUMPHREY.

155 Filbert St., Ste. 208, Oakland, CA 94607
POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
Tel / (510) 929 - 5400

---

[2] **"Vallejo Police Have Highest Rate of Residents Shot Per Capita in Northern California; NBC Bay Area Probes Causes"**
https://www.nbcbayarea.com/news/local/vallejo-police-highest-rate-of-residents-shot-per-capita-in-northern-california-nbc-bay-area-probes-causes/190344/#:~:text=According%20to%20that%20state%20Attorney,any%20other%20Bay%20Area%20city.
[3] **"How a Deadly Police Force Ruled a City"**
 https://www.newyorker.com/magazine/2020/11/23/how-a-deadly-police-force-ruled-a-city

[4] "Senior officials ordered destruction of Vallejo police shooting evidence"

https://openvallejo.org/2023/02/05/vallejo-destroyed-evidence-of-police-killings/

13.     Plaintiff EVANGELINA HUMPHREY (hereinafter "Evangelina") is a competent adult. She is a resident of California and a citizen of the United States. Evangelina brings these claims individually on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal civil rights law, and California state law.

14.     Plaintiff ESTATE OF DARRYL DEAN MEFFERD (hereinafter "Estate") brings this case through its successor-in-interest EVANGELINA HUMPHREY. Plaintiff ESTATE brings its claims on behalf of Decedent on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and federal civil rights law. Plaintiff Estate also brings these claims as Private Attorney General, to vindicate not only Decedent's rights, but also others' civil rights of great importance

15.     Defendant CITY OF VALLEJO (hereinafter "Defendant City") is an incorporated public entity duly authorized and existing as such in and under the laws of the State of California that manages and operates the VALLEJO POLICE DEPARTMENT.

16.     Defendant JEREMY CALLINAN (hereinafter "Defendant Callinan") was and at all times mentioned herein is an officer for the Vallejo Police Department and is sued in his individual capacity.

17.     Defendant ANDREW BIDOU (hereinafter "Defendant Bidou") was the police chief of the Vallejo Police Department and is sued in his individual capacity.

18.     Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities when ascertained. Plaintiffs believe and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each defendant

POINTER & BUELNA, LLP · LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, and excessive force. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint subject to further discovery.

19.     In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment for Defendant City.

20.     Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

21.     Due to the acts and/or omissions alleged herein, Defendants, and each of them, act as the agent, servant, and employee and/or concert with each of said other Defendants herein.

22.     Plaintiffs filed a timely government claim with Defendant City on July 9, 2024, which was rejected by Defendant City as untimely on July 25, 2024. Plaintiffs are seeking relief in superior court to restore their rights to file state claims against the City.

## FACTUAL ALLEGATIONS

23.     On December 7, 2016, Plaintiffs' Decedent Darryl Dean Mefferd was experiencing disorientation, paranoia, and dehydration that were likely the result of a mental health episode. Darryl's niece, Courtney Mefferd, drove Darryl to Sutter Solano Medical Center. Darryl voluntarily checked himself into the hospital for alcohol withdrawal.

24.     After remaining at the hospital and receiving vitamins and a sedative, Darryl checked himself out of the hospital at approximately 11 p.m. on the night of December 7, 2016.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

Hospital staff were worried for Darryl and called Darryl's sister, Cindie, to alert her that her brother left. Cindie drove to the hospital to pick him up.

25.      The hospital staff also called the Vallejo Police Department for a **wholly unrelated matter,** in which a woman who was in the hospital on an involuntary mental health hold had taken her clothing off and left the hospital. The hospital staff called the police to locate this woman, given that it was a cold winter night and she was without clothing and subject to the mental health hold.

26.      The hospital staff never called the police regarding Darryl. Moreover, medical professionals at the hospital had already determined that Darryl was ineligible for an involuntary mental health hold because he was not a danger to himself or others.

### *Defendant Jeremy Callinan's Killing of Darryl*

27.      Defendant Vallejo Police Department Jeremy Callinan responded to the call for the missing woman but encountered Decedent Darryl Mefferd. Defendant Callinan completely disregarded the search for the missing woman to detain Darryl. He handcuffed Darryl in the parking lot and put him into the back of his patrol vehicle.

28.      Shortly after, Darryl's sister, Cindie, arrived and requested to take Darryl Home. Defendant Callinan refused. He stated that her brother was not under arrest, and he was only taking Darryl to Solano County Crisis Center, which is a mental health facility located in Fairfield, California.

29.      It is unclear on what justification Defendant Callinan based such a decision, given that he had already stated that Darryl was not under arrest and hospital staff determined that Darryl was ineligible for an involuntary mental health hold.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

30.    As Defendant Callinan pulled away in his police vehicle with Darryl in the back seat, Darryl shouted to his sister a tragic and prophetic message: "Cindie, they are going to kill me".  Less than thirty minutes later, Defendant Callinan had done just that, killing Darryl via asphyxiation.

31.    On the night of December 7, 2016, Defendant Callinan arrived at Solano County Crisis Center. According to a June 10, 2024 report[5] in Open Vallejo, an individual, who reviewed Defendant Callinan's body worn camera recording of the incident, said Darryl—who was handcuffed at the time the officer and Darryl stumbled to the ground. Darryl fell "flat on his face". According to the source, there was a physical struggle before Defendant Callinan gained control and sat on top of Darryl's back. According to the witness who reviewed Defendant Callinan's body-worn camera and spoke with Open Vallejo, Defendant Callinan got on top of Darryl and "sat on him with his whole body weight […] for 10 minutes". [6]

32.    Darryl's family, including his mother, Evangelina, never knew that Defendant Callinan had sat on top of Darryl with his whole body weight for 10 minutes until this reporting was published in June of 2024.

33.    Darryl eventually went limp as Defendant Callinan remained sitting on top of him. Instead of immediately getting off Darryl and providing medical care, Defendant Callinan remained sitting on the handcuffed and unresponsive Darryl, while Googling the Fairfield Police Department's non-emergency phone number.

[5] https://openvallejo.org/2024/06/10/the-secret-death-of-darryl-dean-mefferd/

[6] https://openvallejo.org/2024/06/10/the-secret-death-of-darryl-dean-mefferd/

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP · LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

34.     Defendant Callinan's decision to call the non-emergency phone number, rather than 911, wasted crucial time as he waited to be patched through to emergency services. Defendant Callinan eventually got through to a Fairfield police dispatcher. The log of this call reads "VPD has one on the ground combative."

35.     One minute after Defendant Callinan spoke with the Fairfield police dispatcher, an individual at the crisis center called law enforcement and, according to the logs, reported a Vallejo Police Officer "fighting with a subject."

36.      Four minutes after Defendant Callinan finally spoke with emergency dispatchers, two Fairfield Police Officers arrived at the scene. Shockingly, they found Defendant Callinan still on top of Darryl, despite the fact that Darryl had been limp for at least five minutes. Darryl was still face down and in handcuffs.

37.     According to the individual who reviewed Defendant Callinan's body-worn camera footage, Fairfield Police Officer Camille Langi quickly recognized the severity of the situation, telling Defendant Callinan to get off of Darryl and suggested CPR. When the officers finally rolled Darryl onto his back, they found he was not breathing. Officer Langi provided chest compressions, while Defendant Callinan held Darryl's head.

38.     On information and belief, Defendant Callinan was never disciplined for his killing of Darryl. Instead, Defendant Callinan received a positive performance evaluation approximately two months after killing Darryl. The day after the killing, Defendant Callinan filed a state workers' compensation claim, claiming he bruised his right knee on the pavement while performing CPR on Darryl.

39.     The Defendant City of Vallejo promoted Defendant Callinan to sergeant in 2022.

***Subsequent Cover-Up***

40.     According to his report, Solano County Deputy Coroner Sergeant Corey McLean initially investigated Darryl's death after receiving a report about an in-custody death and a "physical confrontation with the police". He observed several cuts and bruises on Darryl's knees, face, and buttocks, in addition to evidence of "struggles while wearing handcuffs."

41.     However, Segreant McLean soon changed his report following a conversation with Solano County Detective Ronnie Sefried, who was allegedly present when investigators interviewed Defendant Callinan about the incident. Upon information and belief, Doe City employees, including Defendant Callinan and Sgt. Mustard, convinced Detective Sefried and Sgt. McLean to change their narratives and convinced Sgt. McLean to write a report that left out the force and physical confrontation between Decedent and Defendant. Relying solely on the information he received from Detective Sefried, Sergeant McLean changed his version of events, writing that the reports of a physical confrontation were unfounded and that Defendant Callinan "never had his body weight on the decedent" which contradicted both the video evidence and Callinan's interview statement.

42.     In addition, Sergeant McLean's report made no note of the two calls to police— including one from Defendant Callinan—reporting a physical confrontation. Sergeant McLean relied on Detective Sefried's summary of Defendant Callinan's body-worn camera and claimed that "the visible footage substantiated [Defendant] Callinan's statement".  Sergeant McLean appears to have stopped his investigation altogether after speaking with Detective Sefried and there is no evidence he ever spoke with witnesses at the Solano County Crisis Center.

43.     Defendants convinced Sgt. McLean to change this narrative in order to mislead the medical examiner. Without any context of a physical struggle, Defendants supplied the

POINTER & BUELNA, LLP · LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

narrative that Darryl Mefferd had suddenly collapsed and was unresponsive.  Based on this narrative, the medical examiner was forced to conclude Darryl died of an accidental overdose.

44.    The sanitizing of Defendant Callinan's use of force served a second purpose as well to ensure that Plaintiffs never learned of the nature of Darryl's death. With the death classified accidental, Defendants could refuse the family's requests to disclose the body camera evidence, reports and interview statements forcing the family to accept the narrative that Decedent suddenly collapsed and died.

45.    Not only did Defendants classify the death as accidental but they have refused to admit Defendant Callinan used force or had any physical confrontation at all with Decedent. The decision to fabricate this position served the additional purpose of circumventing California's transparency laws that would have required Defendants to produce the incident records to the public for a use of force incident. In fact, Defendants have refused to produce these records despite ongoing litigation from journalists trying to recover the evidence and have avoided disclosure by continuing to allege that Defendant Callinan did not use any force.

46.    Strictly due to the efforts of journalists and a confidential source, the truth about Darryl's death came to light for the very first time.  On June 10, 2024[7], journalists from Open Vallejo published an article that reveal the previously described factual allegations. It took months of negotiations and litigation to recover the coroner's report and dispatch records. With the help of a confidential source who reviewed the body camera videos, Open Vallejo managed to piece together the truth about what happened and published the factual allegations that his lawsuit described.

---

[7] https://openvallejo.org/2024/06/10/the-secret-death-of-darryl-dean-mefferd/

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP · LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel.: (510) 929 - 5400

47.    Darryl's family previously considered suing the Defendants, but were rejected by several lawyers because official records stated that Darryl collapsed and died from a sudden drug overdose, and the agencies affirmed that narrative and refused to produce any records. Once Open Vallejo published their new article contained the newly disclosed materials and information from the confidential source, Darryl's family, including Plaintiff Evangelina, sought out legal counsel and filed this lawsuit.

### *Monell* Allegations Against Defendant City of Vallejo

48.    Plaintiffs are further informed, believe and therein allege that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of persons who live, work or visit the City of Vallejo, the CITY and Defendant Bidou have allowed persons to be abused by its Police Officers, including Defendant Officers and Does 1-25 and/or each of them, individually and/or while acting in concert with one another.  In the years before and after Defendant Callinan killed Darryl, Defendant Bidou was final decision maker for the police department regarding discipline, training, supervision and development of constitutional policing.

49.    Plaintiffs are informed, believe and therein allege that City of Vallejo Police Department exhibits a pattern and practice of using excessive force against citizens and despite these incidents, none of the Officers are ever found in violation of department policy, even under the most questionable of circumstances. Vallejo Police Department failure to discipline or retrain the Defendant Officers is evidence of an official policy, entrenched culture and posture of deliberate indifference toward protecting citizen's rights and the resulting deaths and injuries is a proximate result of the Vallejo Police Department's failure to properly supervise its Officers and ratification of their unconstitutional conduct. Plaintiffs are informed, believe and therin

1    allege that the following instances are examples of the City of Vallejo's pattern and practice of

2    condoning misconduct:

3

4    (a)    In May 2012, Mr. Anton Barrett, an unarmed man, was shot and killed by

5            Vallejo Police Officer Sean Kenney. Officer Kenney was never disciplined or

6            retrained as a result of shooting an unarmed man. The City of Vallejo settled this

7            case. (See US Eastern District Court Case No.: 2:13-cv-00846)

8    (b)    In 2012, Mr. Mario Romero, an unarmed man, was shot and killed by Vallejo

9            Police Officer Sean Kenney. Officer Kenney was never disciplined or retrained

10           as a result of this incident. The City of Vallejo settled this case. (See US Eastern

11           District Court Case No.: 2:13-cv-01072)

12   (c)    In 2012, Mr. Jeremiah Moore, an unarmed man, was shot and killed by Vallejo

13           Police Officer Sean Kenney. Officer Kenney was never disciplined or retrained

14           as a result of this incident.  After having killed three men in five months, Officer

15           Sean Kenney voluntarily left the department, but was later inexplicably rehired

16           as a Homicide Detective, despite public outcry.

17   (d)    In August 2012, after a pursuit, minor Jared Huey was shot and killed by a

18           Vallejo Police Officer. Mr. Huey was shot while unarmed with his hands up.

19           Upon information and belief, none of the defendants involved in this case were

20           disciplined or retrained. This case settled. (See 2:13-cv-00916)

21

22   (e)    In August 2015, Mr. Jimmy Brooks was having a mental health crisis when

23           Vallejo Police Department Officers Spencer Munoz-Bottomly, Matthew Samida,

24           Zach Jacobsen, James Duncan, Jesse Irwin, Ted Postolaki and "FNU" Hicks

25           contacted him. Instead of providing mental health services, the officers ended up

26

POINTER & BUELNA, LLP · LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

breaking Mr. Brooks' ankle and fibula. No officers were disciplined or retrained as a result of this incident. This case settled. (See 2:16-cv-02376).

(f)   In January 2015, Mr. Jon Connelly was violently attacked by Vallejo Police Officer Bradley Phillips. During the incident, Officer Phillips threw Mr. Connelly to the ground and smashed his hand and wrist into the concrete with his boot, breaking the bones. In addition, Mr. Connelly suffered a torn rotator cuff and other injuries. Federal litigation ensued. Prior to the federal trial in this matter, Vallejo Police Officers threatened one of Mr. Connelly's family members. Mr. Connelly has experienced a pattern of harassment ever since speaking out about this incident. (See US Eastern District Court Case No.: 2:16-cv-1604)

(g)   In June 2015, Jason Anderson was pulled over by Vallejo Police Officers Herndon, Melville, and Coelho. Officers inexplicably tased and punched Mr. Anderson multiple times. During the incident, Officers were caught on audio concocting a story to conceal their violations. No officers were disciplined or retrained as a result of this incident. The case settled. (See US Eastern District Court Case No.: 2:17-cv-00137)

(h)   In December 2015, Mr. Joseph Ledesma was brutally attacked on his front lawn without provocation by Vallejo Police Officers Robert Demarco and Amanda Blain. Mr. Ledesma suffered multiple fractures in both his arms due to Officer Demarco's vicious metal baton strikes. Officer Blain tased Mr. Ledesma multiple times and threatened to do the same to his wife. Mr. Ledesma was struck so many times the metal baton bent and had to be disgarded. In his official police

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

1    report, Officer Demarco claimed he struck Mr. Ledesma only ONE TIME,

2    despite the photographic evidence of numerous baton strikes on Mr. Ledesma's

3    arms. Inexplicably, the officers did not use their body worn cameras until after

4    they ceased using force. No one was disciplined or retrained as a result of this

5    incident. During federal litigation related to this matter, Defendant Demarco

6    provided a patently different fact statement under oath which contradicts the

7    stated facts provided in his police report. He later recanted his new statement and

8    adopted the statements made in his police report.  The case settled. (See 2:17-cv-

9    0010)

10

11    (i)    In April 2016, Mr. Derrick Shields was attacked by multiple Vallejo Police

12          Officers while lying face down on the ground. Officers kicked, punched, and

13          struck him with a baton and flashlight. Mr. Shields was beaten unconscious and

14          sustained a broken jaw and teeth as a result of this incident. Upon information

15          and belief, none of the officers involved in this incident were retrained or

16          disciplined. (See US Eastern District Court Case No.: 2:16-cv-02399)

17    (j)    On January 23, 2017, Decedent Angel Ramos was shot to death by Vallejo

18          Police Officer Zachary Jacobsen. The City of Vallejo Police Department issued a

19          press release about the shooting death wherein they claimed Angel Ramos was

20          shot because he was stabbing a child. This public release of knowingly

21          inaccurate information was calculated to mislead the public and villify the

22          decedent, in order to dissuade public outcry and conceal unlawful practices.

23          Witness testimony and physical evidence belies the department's public claims

24          and shows that Angel Ramos was shot while unarmed and engaged in a fist fight.

25

26

Officer Jacobsen shot Angel Ramos from a place of obvious tactical disadvantage and did not activate his lapel camera, in violation of training and department policy. Officer Jacobsen was not disciplined or retrained as a result of this incident. This case settled. (See US Eastern District Court Case No.: 2:17-cv-01619)

(k) In Feburary 2017, Mr. Michael Kennedy was lawfully videotaping an incident involving Vallejo Police Officers. The Officers demanded that Mr. Kennedy stop videotaping and arrested him in violation of his First Amendment rights. Upon information and belief, officers were not disciplined or retrained as a result of this incident.

(l) In March 2017, Mr. Nickolas Pitts was taking out his garbage when he was accosted by Vallejo Police Officers Ryan McLaughlin and "FNU" Kimodo. Mr. Pitts was commiting no crime or infraction. Nevertheless, the Officers violently threw Mr. Pitts into a light pole and ripped some of his dreadlocks from his head. Officers falsely claimed to onlookers that Mr. Pitts was on parole, despite Mr. Pitts having no criminal record whatsoever. The Officers then proceeded to falsely arrest Mr. Pitts for resisting arrest. During the course of this incident, Officers failed to activate their body worn cameras until after handcuffing Mr. Pitts. All charges were later dismissed against Mr. Pitts and no officers were disciplined or retrained as a result of this incident. This case settled. (See US Eastern District Court Case No.:  2:17-cv-00988)

(m) In March 2017, Mr. Dejuan Hall was viciously beaten by a Vallejo Police Officer while suffering a known mental health episode. Instead of providing

POINTER & BUELNA, LLP · LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

1  assistance, Vallejo PD Officer Spence Munoz-Bottomly punched Mr. Hall in the

2  face multiple times and beat him with a flashlight. This incident was captured on

3  video. Upon information and belief, no officers were disciplined or retrained as a

4  result of this incident. The City of Vallejo settled this case in June 2019.

5  (n)  In July 2017, Mr. Carl Edwards was attacked by Vallejo Police Officers

6  Spencer Muniz-Bottomley, Mark Thompson, Bretton Wagoner, Sgt. Steve

7  Darden while fixing a fence. During this vicious beating, Mr. Edwards suffered

8  head trauma consisting of a broken nose, a black eye, cuts to his face, arms,

9  back, hands, head. The eye injury required that he get stitches over his right

10  brow. This incident was also captured on video. Upon information and belief,

11  none of the officers involved in this incident were disciplined or retrained. It

12  should be noted that Sgt. Steve Darden has a number of unwarranted violent

13  incidents with the public captured on video, including an incident where he

14  attacked a crime victim. Nevertheless, he remains part of the commmand staff.

15  The case settled.

16  (o)  On February 13, 2018, Decedent Ronell Foster was shot to death by Defendant

17  Ryan McMahon, after being stopped for not having a headlight on his bicycle.

18  The City of Vallejo Police Department issued a press release in response to this

19  incident wherein they claimed Mr. Foster and Officer McMahon had a violent

20  confrontation wherein Mr. Foster supposedly menacingly raised a flashlight in

21  his hand, prompting Officer McMahon to fear for his life and open fire. The

22  public release of knowingly inaccurate information was calculated to mislead the

23  public and villify the decedent, in order to dissuade public outcry and conceal the

police department's unlawful practices. Video evidence of the incident belies the department's public claims and shows Mr. Foster being shot in the back while attempting to flee from Officer McMahon, who was striking Mr. Foster in the head with a flashlight. Officer McMahon did not activate his body worn camera until after Mr. Foster was shot and killed. Officer McMahon was never disciplined or retrained after shooting an unarmed man in the back. This case settled for $5.7 million. (See US Eastern District Court No.: 2:18-cv-00673)

(p)   In April 2018, Ms. Sherry Graff was at her home when Vallejo Police Officer Murphy arrived in response to a welfare check. Ms. Graff was lured out of her house for the purpose of being arrested. Ms. Graff was thrown down the stairs and abused so violently that her breasts were covered in fingerprints that were caused by being unlawfully groped. As a aresult of the attack, Ms. Graff required mutiple staples to repair the lacerations to her head. This incident was captured on lapel camera video. No one was disciplined or retrained as a result of this incident. This case is currently being litigated. (See US Eastern District Case No.: 2:18-cv-02848);

(q)   In August 2018, Angel Bagos was attacked by Vallejo Police Officers in front of a restaurant. Without cause, the Officers knocked Mr. Bagos down, hog tied and severely beat him with a flashlight. Mr. Bagos was arrested, but all charges were subsequently dropped. This incident was also captured on video. Upon information and belief, none of the officers involved in this incident were disciplined or retrained. Litigation is ongoing in this matter.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

(r)  In October 2018, Delon Thurston was racially profiled and stopped without cause by Vallejo Police Officer Kevin Barreto. After alleging that Ms. Thurston stole her own car, which had not been reported stolen, the Officers dragged her out of her own car, which was parked in her own driveway and arrested her. In a blatant display of police power, abuse and depravity, the officer penetrated Ms. Thurston's vagina through her clothing. Ms. Thurston was arrested and taken to jail.  The District Attorney did not charge Ms. Thurston with a crime. Ms. Thurston had never been arrested prior to this incident. No one was disciplined or retrained as a result of this incident. A claim was filed with the City of Vallejo and a federal civil rights lawsuit is pending.

(s)  In January 2019, Mr. Adrian Burrell was lawfully videotaping his cousin Michael Lawson, who was being held at gunpoint by Vallejo Police Officer David McLaughlin for an alleged traffic violation. Mr. Burrell was standing on the porch of his own home, approximately 35 feet away from the officer. Vallejo Police Officer David McLaughlin unlawfully demanded that Mr. Burrell go back into his house. When Mr. Burrell refused, Officer McLaughlin attacked Mr. Burrell, causing him to suffer a concussion and other injuries. Officer McLaughlin then placed him under arrest. Fortunately, the incident was captured on video and was the subject of international outrage. It was later learned that in August 2018, Officer David McLaughlin violently attacked a man in Walnut Creek on video, while off duty, which was known to the Chief of Police Andrew Bidou. Mr. Adrian Burrell met with Chief of Police Andrew Bidou following the incident. Despite seeing two videos of Officer McLaughlin engaging in two

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

unprovoked violent attacks on innocent people, and other violent on duty incidents, Chief Bidou maintains that Officer McLaughlin was not a danger to the community.  Mr. Burrell sued the City of Vallejo and the case settled.

(t)   On February 9, 2019, six Vallejo Police Department officers fired 55 shots into the car of Wille McCoy, who had fallen asleep in the car in a Taco Bell drive-thru, killing him. The City settled ultimately settled the case stemming from this killing for $5,000,000. One of the shooting officers—Ryan McMahon—allegedly bent his badge following the shooting. [8] It was later revealed the Ofc. McMahon had etched a vigilante insignia on the back of the pistol he used in the shootings.

(u)   In March 2019, Carlos Yescas was stopped by a Vallejo Police Department Lieutenant Nichelini for a minor traffic offense. The Lieutenant was in plain clothes and driving an unmarked car not suitable for transport. Lt. Nichelini failed to identify himself as a police officer and falsely accused Mr. Yescas of resisiting, because he was still wearing his seatbelt. Lt. Nichelini tried to drag Mr. Yescas out of the car while he was still in his seatbelt. Mr. Yescas was thrown onto the ground, while the Lieutenant kneeled down and onto his back. Mr. Yescas told the Lieutenant that he was unable to breath. Mr. Yescas was arrested. This incident was captured on video by Mr. Yescas' 10-year-old brother. To date, members of the Vallejo Police Department continue to follow, stop and harass the Yescas family. Upon information and belief, Lt. Nicholini

---

[8] https://www.vallejosun.com/vallejo-settles-lawsuit-over-2019-police-shooting-of-willie-mccoy-for-tk/

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

was not disciplined or retrained as a result of this incident. Mr. Yescas had never been arrested prior to this incident.

(v) On April 15, 2019, Deyana Jenkins and several young women were stopped without cause by multiple Vallejo Police Officers. Ms. Jenkins is the niece of Decedent Willie McCoy. The young women were held at gunpoint without cause. Ms. Jenkins was compliant; nevertheless, a yet-to-be-identified Officer dragged her out of the car, threw her on the ground and tased her.  Ms. Jenkins was arrested and taken to jail. The District Attorney refused to charge Ms. Jenkins with any crime related to this unlawful incident. Prior to this incident, Ms. Jenkins had never been arrested in her entire life. The incident was captured on bystander cellphone video. Upon information and belief, no officers were disciplined or retrained as a result of this incident. The federal civil rights lawsuit is still pending..

(w) In May 2019, the City of Vallejo held a town hall forum for people to discuss the selection of a new Chief of Police. Nearly every single person in the room of approximately 100 people reported fear and concerns about the Vallejo Police Department. Individuals of every race, age, religion, sexual orientation and socioecomonic group presented their concerns about Vallejo Police Department's well-documented history of racial profiling, abuse, violence and intimidation of members of the community. Vallejo's City Manager Greg Nyhoff was present during the entire meeting and spoke to the room of people. Manager Nyhoff told the forum participants that he was the person untimately

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

responsible for the Chief and the Department and that "the bucks stops with me [him]".

(x) On June 25, 2019, Vallejo City Manager Greg Nyhoff spoke at a regularly scheduled City Council meeting.  Shockingly, Mr. Nyhoff publicly ratified the department's infamous history of violence and contravened the countless civil claims, civil complaints, videos, photos and testimonials from the community reporting unwarranted violence, abuse, false arrest, racial profiling and intimidation by denying that there is an excessive force problem with Vallejo Police Officers. "My opinion, those just don't seem like there's excessive use of force or a lot of use of force in our community," Nyhoff said. "There are people who resist," Nyhoff said. "There are people with mental illness who you just have to use force, sometimes for their own health or well being." Mr. Nyhoff's statements clearly seek to publicly ratify, encourage and condone the department's well documented pattern and practice of gratuitous violence and unconstitutional policing. Mr. Nyhoff's statements regarding force being used on mentally ill individuals is in contrast to P.O.S.T. training, Vallejo Police Department policy, state and federal law and seeks to excuse unlawful behavior.

50.    Moreover, at least five people, including Darryl, have died in Vallejo Police Custody while being held in a prone restraint. All five deaths have been ruled an accident, despite evidence suggesting the deaths may have been caused by police use of force. [9] In

---

[9] https://openvallejo.org/2024/06/10/the-secret-death-of-darryl-dean-mefferd/

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

addition Sgt. Mustard and assistant City Attorney Katelyn Knight have engaged in the

destruction of evidence in other cases.

51.     Plaintiffs are informed, believe and therein allege that City of Vallejo knew, had

reason to know by way of actual or constructive notice of the aforementioned policy, culture,

pattern and/or practice and the complained of conduct and resultant injuries/violations.

52.     Plaintiffs further allege that the aformentioned policy, culture, pattern, and/or

practice was overseen by Defendant BIDOU and known to the Defendant CITY, thereby

causing the death of Decedent.

## DAMAGES

53.     As a proximate result of each of the Defendants' negligence and violations of

Plaintiffs' federal civil rights under 42 U.S.C. §1983, the Fourth Amendment, and California

state law, Plaintiffs suffered injuries, emotional distress, fear, terror, anxiety, and loss of sense

of security, dignity, and pride as United States Citizens.

54.     As a direct and proximate result of each Defendant's acts and/or omissions as set

forth above, Plaintiffs sustained the following injuries and damages, past and future, among

others:

    a.   Wrongful death of DARRYL MEFFERD;

    b.   Hospital and medical expenses;

    c.   Coroner's fees, funeral and burial expenses;

    d.   Loss of familial relationships, including loss of love, companionship, comfort,

        affection, society, services, solace, and moral support and loss of familial

        association;

    e.   Pain and Suffering, including emotional distress;

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

f.   DARRYL MEFFERD'S conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

g.   Violation of constitutional rights;

h.   All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988, California Civil Code §§ 52, 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

55.   The conduct of Defendant Callinan was malicious, wanton, oppressive, and in reckless disregard of the right and safety of Plaintiffs and the public. Plaintiffs are therefore entitled to an award of punitive damages against Defendant Callinan.

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**
**(Fourth Amendment—Excessive Force under 42 U.S.C. Section 1983)**
(*Plaintiff ESTATE as successor-in-interest to DECEDENT against Defendant CALLINAN*)

56.   Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

57.   When Defendant Callinan sat on top of Decedent with his whole body weight for ten minutes while Decedent was handcuffed and lying face down, Defendant Callinan did not have a reasonable belief that Decedent presented an imminent threat to officers or anyone else. Decedent was handcuffed, non-combative, and had already fallen to the ground at the time that the Defendant got on top of him. Indeed, evidence suggests that Defendant Callinan remained sitting on top of Decedent's back for several minutes after Decedent went limp and unresponsive.

58.     The conduct of Defendant Callinan was excessive and unreasonable, which violated both his training and Decedent's constitutional rights under the Fourth Amendment.

59.     As a result of his misconduct, Defendant Callinan is liable for Decedent's injuries and/or damages.

60.     The conduct of Defendant Callinan was egregious, outrageous and shocks the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Decedent's health and well-being. As such, Plaintiffs seek punitive damages and penalties as allowable under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
**(Fourteenth Amendment—Familial Loss under 42 U.S.C. Section 1983)**
(*PLAINTIFF EVANGELINA HUMPHREY, individually, against Defendant CALLINAN*)

61.     Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

62.     By the actions and omissions described, Defendant Callinan violated 42 U.S.C. § 1983, depriving Plaintiff Evangelina Humphrey of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment of the United States Constitution including:

      a.   Right to familial association.

63.     Defendant Callinan subjected Decedent to his wrongful conduct, thereby depriving Decedent and Plaintiffs of the rights described herein with reckless disregard for whether the rights and safety of Decedent, Plaintiffs, and others would be violated by their acts and/or omissions. Defendant Callinan used unreasonable excessive force against Decedent, thereby depriving Plaintiff of her familial relationship with her son.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

64.    As a direct and proximate result of Defendant Callinan's acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth herein.

WHEREFORE, Plaintiffs prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(Municipal Liability for Unconstitutional Custom or Policy (*Monell*)—42 U.S.C. § 1983)**
(*Plaintiffs ESTATE and EVANGELINA HUMPHREY individually against Defendants CITY, BIDOU, and DOES 1-50)*

65.    Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as fully set forth here.

66.    Plaintiffs are informed and believe and thereon allege that high-ranking CITY officials, including Defendant Police Chief Bidou and DOES 1-50, and/or each of them, knew and/or reasonably should have known that Vallejo Police Officers are inadequately trained and historically engage in actions contrary to state law, federal law, and department policy, as described above.

67.    Plaintiffs are informed and believe and thereon allege that high-ranking CITY officials, including Defendant Police Chief Bidou, and DOES 1-50, and/or each of them, knew and/or reasonably should have known that their officers are inadequately supervised, resulting in a lack of discipline and failure to retrain and involved officer after officer engage in conduct contrary to state law, federal law, and department policy, as described above.

68.    Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants CITY, Bidou, and DOES 1-50, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the employment of inadequately trained police officers that engage in actions contrary to state law, federal law, and department policy, as described above.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

69.     Plaintiffs are informed and believe and thereon allege that high ranking CITY officials, including Defendants Chief Andrew Bidou and DOES 1-50, and/or each of them, knew and/or reasonably should have known that supervisory and training staff, up to and including the Chief of Police, failed to adequately supervise, discipline and retrain officers who were blatantly violating state law, federal law and department policy.

70.     Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants CITY, Bidou, and DOES 1-50, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the failure to adequately supervise officers. Defendants went so far as to publicly criticize media outlets for broadcasting true and accurate information about incidents of excessive force.

71.     Despite having such notice, Defendants Chief Andrew Bidou, and DOES 1-50, and/or each of them, publicly and openly deny the existence of any ongoing and systemic violence and/or unlawful conduct perpetrated, orchestrated and covered-up by City of Vallejo Police Department staff, and thereby approve, ratify, condone, encourage and/or tacitly authorize unlawful behavior.

72.     The injuries and damages to Decedent and Plaintiffs as alleged herein were the foreseeable and proximate result of said inadequate training and/or inadequate supervision of Defendants and/or DOES 1-50 in his/their capacity as police officers for the CITY, and each of them.

73.     Plaintiffs are informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training and supervision of the Defendants and/or DOES 1-50 in his/their capacity as police officers for the CITY.

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

POINTER & BUELNA, LLP · LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400

74.    The aforementioned failure to train and/or supervise Defendants and/or DOES 1-50 in his/their capacity as police officers for the CITY, and each of them, resulted in the deprivation of Decedent and Plaintiffs' constitutional rights including, but not limited to, violations of the Fourth and Fourteenth Amendment.

75.    The aforementioned inadequate training and supervision of officers resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

a.    The right to be free from excessive force, as guaranteed by the Fourth Amendment to the United States Constitution;

b.    The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution, and;

c.    The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution;

76.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## **JURY DEMAND**

77.    Plaintiffs hereby demand a jury trial in this action

## **PRAYER**

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For general damages in a sum to be proven at trial;

2.    For wrongful death damages in a sum to be proven at trial;

3.      For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

4.      For punitive damages against Defendant Callinan and DOES 1-50 in a sum according to proof;

5.      All other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

6.      For injunctive relief, including but not limited to, changing Vallejo Police Department policies and procedures relating to the use of deadly force;

7.      For the cost of suit herein incurred; and

8.      For such other and further relief as the Court deems just and proper.

/
/
/

Dated:  September 9, 2024          POINTER & BUELNA, LLP
                                   LAWYERS FOR THE PEOPLE

                                   /s/ Ty Clarke
                                   ADANTÉ POINTER
                                   PATRICK BUELNA
                                   TY CLARKE
                                   Attorney for PLAINTIFFS

ted:  September 9, 2024            POINTER & BUELNA, LLP
                                   LAWYERS FOR THE PEOPLE

                                   /s/ Patrick Buelna
                                   ADANTÉ POINTER
                                   PATRICK BUELNA
                                   TY CLARKE
                                   Attorney for PLAINTIFFS

POINTER & BUELNA, LLP - LAWYERS FOR THE PEOPLE
155 Filbert St., Ste. 208, Oakland, CA 94607
Tel: (510) 929 - 5400